(Reap. Dec. 10939)

JULIUS GOLDFARB
ISRAEL MENCHACA ET AL. } *v.* UNITED STATES

Entry No. 6127, etc.

(Decided April 6, 1965)

*Lawrence & Tuttle* (*Edward N. Glad* of counsel) for the plaintiffs.
*John W. Douglas*, Assistant Attorney General (*Sheila N. Ziff*, trial attorney), for the defendant.

Wilson, Judge: The merchandise involved in these appeals, consolidated at the trial, consists of strawberry preserves or jams exported from Mexico during the period from February 1957 through August 1957. It consists of 3 different size packs: 24 jars of 20 ounces each to a case, 12 jars of 20 ounces each to a case, and 6 number 10 cans per case.

It was stipulated between counsel for the respective parties that the proper basis of appraisement for such merchandise is foreign value, as that value is defined in section 402(c) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938, and that no export value for such or similar merchandise existed during the period under consideration (R. 4–5). Plaintiffs contend, however, that the proper prices to be taken in finding foreign value for such merchandise are those prices at which the manufacturer sold to wholesalers in Mexico and not the prices at which the wholesalers sold to retailers, which were the prices upon which appraisement of the involved merchandise was based.

The appraised values and the values contended for by the plaintiffs are represented by the following:

| Item | Appraised value per case, net, packed | Values contended for— per case, net, packed |
|---|---|---|
| 1. 12 jars of 20 ounces apiece per case | 50 Mexican pesos, less 5%, less 1% | 35.15 Mexican pesos |
| 2. 24 jars of 20 ounces apiece per case | 100 Mexican pesos, less 5%, less 1% | 72 Mexican pesos |
| 3. 6 number 10 cans per case | 100 Mexican pesos, less 5%, less 1% | 90 Mexican pesos |

As disclosed by the record, it appears that there was an error in appraisement with respect to entry 5284 covered by appeal R58/13535. Counsel for the parties herein have agreed, as to the appraisement made under said entry, that "in the event there has been a failure of proof on the part of the plaintiff that this particular appraisement should not read $100 Mexican currency, less 5, less 1 per cent, net packed, but should read $50 Mexican currency, less 5, less 1, net packed" (R. 3).

The sole witness in this case was Mr. Julius Goldfarb, Los Angeles, Calif., who stated that he was associated in 1955 or 1956 with Mr. Roberto Morales in a partnership in Silao, the State of Guanajuato, Mexico. He testified that he has been engaged in the business of processing foods, such as jams, jellies, and other such products, in Los Angeles and Mexico during the past 34 years (R. 6–7). Mr. Gold-

farb stated that he was familiar with the involved merchandise and that, in connection with the sale of such goods, he had helped Mr. Morales "figure out on costs" (R. 10). The witness testified that he had sold these items to wholesalers and to some retailers and that his sales for consumption in Mexico were on a cash basis; that he did not, to his knowledge, have any exclusive arrangement with any retailer or distributor up until the end of the growing season for 1957. Mr. Goldfarb then testified that he freely offered the cases of 24 jars, 20 ounces each, at 72 pesos a case and that no discounts were made off this price, at minimum orders of "ten cases or more" (R. 10–11); that he offered the cases of 12 jars of 20 ounces each at 35.15 pesos per case; and that he "tried" in such instances to get 10 or 20 cases or more as a wholesale price; that he sold or offered to sell for consignment the cases of 6 number 10 cans at 90 pesos a case; and that the wholesale quantities on such sale were "Supposed to have been 10 cases or more to qualify" (R. 11). Plaintiffs' witness further stated that he sold some of this merchandise to the retail trade, the stores, around the town of Silao for 42.50 pesos; that he was familiar with the marketing procedures during 1957 for items, such as are here involved; and that some distributors and manufacturers gave credit as part of the terms of sale. Mr. Goldfarb testified that, in offering his merchandise for consumption in Mexico, his terms were on a cash basis (R. 13).

On cross-examination, plaintiffs' witness testified that his firm did not issue a pricelist for these items in 1957. He further stated that he has no invoices or other documents reflecting the sales of such items in 1957; that he has no letters which he can produce showing offers of this merchandise for sale during that period, nor any letters or other documents showing orders for this merchandise (R. 14–15). Mr. Goldfarb further testified that he was always in Mexico during the strawberry season which, he stated, lasts about 4 or 5 months starting around January 15 through the first part of June (R. 16–17).

The Government offered and there was received in evidence a report (No. 3–260), dated September 17, 1957, and signed by Mr. Joe M. Uberuaga, Treasury representative, relative to an interview had with Mr. Roberto Morales, heretofore identified as associate and partner of plaintiffs' witness, Mr. Goldfarb, concerning sales of merchandise, such as here involved (defendant's collective exhibit A).

Plaintiffs, in these appeals, have the twofold burden of not only showing that the appraisements were erroneous but also of establishing that the values claimed by them are correct. *Kenneth Kittleson* v. *United States*, 40 CCPA 85, C.A.D. 502. In this connection, the appealing parties must meet every material issue involved in the case and, upon failure to do so, the values fixed by the appraiser remain in full force and effect. *Brooks Paper Company* v. *United States*,

40 CCPA 38, C.A.D. 495. In the case at bar, plaintiffs' witness, as indicated by the testimony heretofore referred to, had no letters to show offers of the involved merchandise for sale during the period in question, nor did he produce any records, documents, or pricelists to support his statements as to the terms of the sales of such merchandise during the involved period. Accordingly, the statements made by the witness as to prices, discounts, and the usual wholesale quantities in which the merchandise was offered and sold are merely unsubstantiated conclusions on his part and lack the probative force to establish the claimed values for the merchandise. *Brooks Paper Company* case, *supra*. In the case of *Border Brokerage Company* v. *United States*, 52 Cust. Ct. 567, Reap. Dec. 10759 (review pending), the court stated:

* * * Mere statements of a witness, as to what constitutes the usual wholesale quantity in the sale of merchandise, do not constitute probative evidence in establishing this element of valuation or the usual discounts allowed to purchasers and are mere conclusions unworthy of consideration in the ascertainment of dutiable value. *Jenkins Brothers* v. *United States*, 25 CCPA 90, T.D. 49093.

Plaintiffs, in their brief, contending that reliance should be placed upon the testimony of plaintiffs' witness in establishing the claimed values, directs attention to the holding of the court in *Kobe Import Co.* v. *United States*, 43 CCPA 136, C.A.D. 620. The court therein held, in effect, that where testimony is given in the presence of opposing counsel, there is an opportunity to object or call for statements of the facts upon which the witness' opinion or conclusion is based, and that the opinions and conclusions of a witness may be sufficient to sustain the claimed values. The witness, in the *Kobe* case, *supra*, had testified as to what constituted the usual wholesale quantities for the merchandise there involved. The court therein held that there was nothing to refute or discredit the testimony of plaintiff's witness and that the presumption of correctness attaching to the appraiser's action in finding value had been overcome. The testimony of the plaintiffs' witness in the present case, however, is unlike that given by the witness in the cited case. As heretofore noted, plaintiffs' witness testified that he sold to wholesalers and some retailers and that the minimum order of 24 jars of 20 ounces each that he would sell at wholesale was "ten cases or more" (R. 11). However, his testimony with respect to the cases of 12 jars of 20 ounces each was to the effect that "there we tried to get 10 or 20 cases or more as a wholesale price" (R. 11). In my opinion, such testimony, as above noted, lacks that quality of definiteness and that amount of specificity which is required under the statute, in order to establish the usual wholesale quantity in which the involved merchandise was freely offered or sold. The fact that plaintiffs' witness testi-

fied in open court does not relieve the plaintiffs of establishing by competent evidence the usual wholesale quantity in which the merchandise in question was freely offered to all purchasers in the ordinary course of trade. Upon failure to do so, which I believe to be the fact in the case at bar, the appraised values must stand. *Wm. E. Phillips Co.* v. *United States*, 39 Cust. Ct. 723, A.R.D. 78.

In determining foreign value, as defined in section 402(c) of the tariff act, as amended, *supra*, consideration must be given only to the market value or the price at the time of exportation at which such or similar merchandise is freely offered for sale for home consumption *to all purchasers* in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade. *United States* v. *Mexican Products Co.*, 28 CCPA 80, C.A.D. 129. In ascertaining the usual wholesale quantity, sales to retailers for resale should be considered, along with sales to other classes of purchasers. *Jenkins Brothers, supra.* Accordingly, sales to retailers by the manufacturer herein may not be ignored. I am of opinion that the record in this case lacks sufficient probative evidence in establishing the usual wholesale quantity for the involved merchandise. Accordingly, the plaintiffs herein have not discharged their burden of proving that the appraiser's action was erroneous or that their claimed values are correct within the statutory requirements. The appraiser's finding of value in each case has not been overcome and, as heretofore indicated, must stand.

Upon the record here presented, I find as facts:

1. That the merchandise involved herein consists of strawberry preserves or jams, packed in cases of 24 jars of 20 ounces apiece to a case, 12 jars of 20 ounces apiece to a case, and 6 number 10 cans per case, exported from Mexico during the period from February 1957 through August 1957.

2. That such or similar merchandise was freely offered for sale in the principal markets in Mexico on or about the period of exportation herein, in the ordinary course of trade, and in the usual wholesale quantities for home consumption.

3. That such or similar merchandise was not freely offered for sale to all purchasers for exportation to the United States during the period in question.

4. That the merchandise was appraised in accordance with section 402(c) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938, as follows:

| Item | Price per case, net, packed |
| --- | --- |
| 24 jars of 20 ounces per case | 100 Mexican pesos, less 5%, less 1% |
| 12 jars of 20 ounces per case | 50 Mexican pesos, less 5%, less 1% |
| 6 number 10 cans per case | 100 Mexican pesos, less 5%, less 1% |

5. That there is no substantial evidence within the statutory requirements to establish any other values than those returned by the appraiser.

I conclude as matters of law:

1. That plaintiffs have failed to overcome the presumption of correctness attaching to the values found by the appraiser.

2. That foreign value, as that value is defined in section 402(c) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938, is the proper basis of value for the merchandise herein involved.

3. That such statutory value is the appraised value in each case. Judgment will be rendered accordingly.